IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**HERMINE B.,[1]**

                Plaintiff,                             **Civ. No. 3:22-cv-00879-MC**

        v.                                **OPINION AND ORDER**

**COMMISSIONER, SOCIAL SECURITY**
**ADMINISTRATION,**

                Defendant.

_____

**MCSHANE, Judge**:

Plaintiff Hermine B. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). This Court has jurisdiction under 42. U.S.C. §§ 405(g) and 1383(c)(3). For the reasons explained below, the Commissioner's decision is reversed and remanded for further proceedings.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case.

evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## **BACKGROUND**

### I.    **PLAINTIFF'S APPLICATION**

Plaintiff filed her application for SSI on December 10, 2018, and her application for DIB on December 11, 2018. Tr. 310, 321. She alleged an onset date of June 20, 2015, for both applications. Tr. 134. Plaintiff's claims were denied initially on May 1, 2019, and on reconsideration on December 23, 2019. Tr. 132-49, 183-98.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held an initial hearing on September 28, 2020, and a second hearing on January 20, 2021. Tr. 123-31, 98-22. On April 28, 2021, the ALJ issued an opinion finding Plaintiff not disabled. Tr. 60-77. On June 22, 2021, the Appeals Council granted Plaintiff's request to provide more information, Tr. 7-8, and on June 30, 2022, Plaintiff produced a letter from Dr. Sonia Sosa

regarding Plaintiff's diagnosis of fibromyalgia, Tr. 5-6. On May 5, 2022, the Appeals Council concluded Dr. Sosa's letter did not provide a basis for changing the ALJ's decision, and denied Plaintiff's request for reconsideration, making the ALJ's decision the final decision of the Commissioner. Tr. 52-55. This appeal followed.

## II.    THE SEQUENTIAL ANALYSIS

A claimant is considered disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (2) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education,

and work experiences." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since her alleged onset date. Tr. 63. At step two, the ALJ determined that Plaintiff suffers from the following medically determinable, severe impairments: "a history of invasive ductal carcinoma of the right breast, status-post lumpectomy; major depressive disorder; generalized anxiety disorder; post-traumatic stress disorder; somatic symptoms disorder; personality disorder; a mild cognitive disorder diagnosed as of September 9, 2020; and headaches." Tr. 63. The ALJ also determined that Plaintiff was diagnosed with fibromyalgia via a telemedicine evaluation on April 10, 2020, but that such a diagnosis did not meet the requirements of Social Security Ruling 12-2p for diagnosing fibromyalgia. Tr. 64. Therefore, the ALJ concluded that Plaintiff's fibromyalgia was not established as a medically determinable impairment. *Id.*

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or equals a listing. *Id.* The ALJ then determined Plaintiff's residual functional capacity ("RFC"), finding that Plaintiff had the ability to perform medium work, except that:

> [S]he can do simple, routine, and repetitive tasks with a reasoning
> level of 1-2; have occasional contact with members of the public
> and co-workers; and she should have no exposure to extreme heat,
> fumes, gases, dust, and odors in the workplace.

Tr. 67. At step four, the ALJ found that Plaintiff could not perform her past relevant work. Tr. 75. At step five, the ALJ determined that Plaintiff could perform jobs existing in significant

numbers in the national economy, including janitor, laundry worker, and rack loader. Tr. 77. The ALJ therefore concluded that Plaintiff was not disabled. *Id.*

## DISCUSSION

Plaintiff argues that the ALJ erred by (1) not finding her fibromyalgia diagnosis a medically determinable impairment at step two; (2) improperly discounting Plaintiff's subjective symptom testimony; and (3) improperly discounting Dr. Sosa's medical opinion. The Court addresses each in turn.

## I.    STEP TWO

At step two, the ALJ determines what "medically determinable physical or mental impairments" a claimant has. 20 C.F.R. § 404.1520(a)(4)(ii). However, "[s]tep two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). If the sequential analysis proceeds beyond step two, meaning that it has been resolved in the claimant's favor, the failure to classify an impairment as severe will generally be harmless. *Id.* at 1049. This is because step two "is not meant to identify the impairments that should be taken into account when determining the RFC." *Id.* at 1048-49. "In fact, in assessing the RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* at 1049 (quotation and citations omitted, emphasis in original removed). "The RFC therefore *should* be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* (emphasis in original).

Here, Plaintiff asserts the ALJ erred by failing to include fibromyalgia among Plaintiff's medically determined severe impairments at step two.

Fibromyalgia is a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissues, with symptoms that include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue. *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017). Fibromyalgia is diagnosed "entirely on the basis of the patients' reports of pain and other symptoms" and there are "no laboratory tests to confirm the diagnosis." *Id.* (quotation marks and citations omitted).

The Commissioner has issued additional guidance for cases involving fibromyalgia, both in terms of establishing when a claimant has a medically determinable case of fibromyalgia and in evaluating fibromyalgia in disability claims. Social Security Ruling ("SSR") 12-2p, *available at* 2012 WL 3104869. Generally, a claimant can establish a medically determinable impairment of fibromyalgia by providing evidence from an acceptable medical source. *Id.* at *2. However:

> We cannot rely upon the physician's diagnosis alone. The evidence must document that the physician reviewed the person's medical history and conducted a physical exam. We will review the physician's treatment notes to see if they are consistent with the diagnosis of FM [fibromyalgia], determine whether the person's symptoms have improved, worsened, or remained stable over time, and establish the physician's assessment over time of the persons physical strength and functional abilities.

*Id.*

In order to establish a medically determinable impairment of fibromyalgia, the diagnosing physician must base her conclusion on:

> (1)  A widespread history of pain;
>
> (2)  At least eleven positive tender points on physical examination or, alternatively, repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions,

> especially manifestations of fatigue, cognitive or memory
> problems ("fibro fog"), waking unrefreshed, depression, anxiety
> disorder, or irritable bowel syndrome;
>
> and
>
> (3)    Evidence that other disorders that could cause the signs,
> symptoms, or co-occurring conditions were excluded.

*Id.* at *2-3.

In the record before the ALJ, the first time fibromyalgia was discussed was on April 10, 2020, in a video appointment. Here, Dr. Sonia Sosa's notes reflect that she and Plaintiff "[d]iscussed fibromyalgia briefly" and that Dr. Sosa "sent new diagnostic criteria for" Plaintiff to review. Tr. 1834. Then on June 10, 2020, Dr. Sosa's notes say, "Fibromyalgia (primary diagnosis)," with no other explanation. Tr. 1829. Finally, in a letter in support of Plaintiff's application for disability, Dr. Sosa stated that Plaintiff has been diagnosed with fibromyalgia. Tr. 2116.  As the ALJ correctly noted, "the medical record does not contain the requisite criteria for the diagnosis of fibromyalgia to be established as a medically determinable impairment as described in SSR 12-2p." Tr. 64. Specifically, the ALJ found "there was no documentation of tender points in the record" and "the record does not show evidence that other disorders, that could cause the signs or symptoms attributed to fibromyalgia, were excluded." *Id.*

After the ALJ's decision, the Appeals Council accepted a second letter from Dr. Sosa. In that letter, Dr. Sosa explained:

> I understand that a judge rejected the diagnosis of fibromyalgia and
> rejected my opinion about [Plaintiff's] limitations. [Plaintiff's]
> attorney contacted me, and advised me in the drafting of this letter.
> The attorney explained that the judge rejected the diagnosis
> because the Social Security Administration only recognizes
> diagnosis of fibromyalgia made using the 1990 and 2010 ACR
> Criteria for the Classification of Fibromyalgia. Those criteria are

> not the present standard of care for diagnosing fibromyalgia.
> However, once I was aware that the Social Security Administration
> uses only the older criteria, I performed those evaluations and
> diagnosed fibromyalgia under the older criteria. [Plaintiff] clearly
> meets criteria for fibromyalgia under all available criteria and is
> disabled by this condition.

Tr. 5.

In evaluating new evidence, "the court examines both whether the new evidence is material to a disability determination and whether a claimant has shown good cause for having failed to present the new evidence to the ALJ earlier." *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001). Evidence is material if it bears "directly and substantially on the matter in dispute." *Id.* The plaintiff "must additionally demonstrate that there is a 'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing." *Id.* at 462 (quoting *Booz v. Sec'y of Health & Hum. Servs.*, 734 F.2d 1378, 1380-81 (9th Cir. 1984)).

In this case, it is unlikely that Dr. Sosa's second letter would have changed the outcome of the administrative hearing. Assuming that Dr. Sosa is correct—for the Court has no reason to doubt her—that the Commissioner's requirements for diagnosing fibromyalgia are outdated, the ALJ and this Court are still required to follow the Commissioner's guidance. SSR 12-2p specifically states that a medical provider's diagnosis alone is not sufficient for fibromyalgia to be considered a medically determinable impairment. SSR 12-2p, *available at* 2012 WL 3104869 at *2. With Dr. Sosa's second letter, all she provides is a diagnosis. Dr. Sosa does not provide any evidence of positive tender points, other co-occurring conditions, nor that other disorders that could causes similar symptoms have been excluded. *See id.* at *2-3.

The ALJ correctly found that the requirements of SSR 12-2p were not met and, therefore, did not err by finding Plaintiff's fibromyalgia was not a medically determinable impairment at

step two. Moreover, because the new evidence still does not meet the requirements of SSR 12-2p the Appeals Council did not err in concluding the new evidence had no reasonable probability of changing the outcome of the proceeding.

## II.    PLAINTIFF'S SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff contends the ALJ erred in discounting her subjective symptom testimony. To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ performs a two-stage analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Second, absent affirmative evidence that the claimant is malingering, the ALJ must provide specific, clear, and convincing reasons for discounting the claimant's testimony regarding the severity of the symptoms. *Trevizo*, 871 F.3d at 678; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The Ninth Circuit demands more than a summary of the medical evidence and generic, high-level reasons why a claimant's allegations conflict with that evidence. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The Ninth Circuit "requires the ALJ to specifically identify the testimony she or he finds not to be credible and . . . explain what evidence undermines that testimony." *Id.*; *Brown-Hunter*, 806 F.3d at 494.

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms" about which the claimant complains. *Bowers v. Astrue*, No. 6:11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti*, 533 F.3d at 1040); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at her hearing do not comport with objective medical evidence in her medical record." *Bray*, 554 F.3d at 1227. However, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

Plaintiff was diagnosed with breast cancer and had a lumpectomy performed on her right breast to remove the cancerous tissue, followed with radiation treatment. Tr. 1014, 1001. Due to the surgery, Plaintiff developed "considerable scar tissue restrictions with palpable cording" in her upper right arm. Tr. 512. She engaged in physical therapy for her right shoulder from October 2016 through January 2019 to improve her mobility. *See, e.g.*, Tr. 968, 1640. Plaintiff was also diagnosed with dysautonomia, a disorder of the autonomic nervous system functions, which effects Plaintiff's balance and causes lightheadedness and dizziness. Tr. 772, 784, 799. *See Kellner v. Colvin*, No. SACV 12-1457-JPR, 2013 WL 3200581, at *9 n.14 (C.D. Cal. June 24, 2013) ("Dysautonomia refers to a disorder of autonomic nervous system function.").

In her function report and at the hearing, Plaintiff explained that she is constantly exhausted and only has "1-3 functional hours a day." Tr. 377, 107-08. Plaintiff testified that after

she showers, she is exhausted and needs to rest. Tr. 110. She goes to her various doctor's appointments and art-group therapy for cancer survivors 2-3 times a month. Tr. 110, 381. But after any appointment she "come[s] straight home" to rest. Tr. 110. She testified that she cannot "stand for very long" or "sit for very long." Tr. 107-08. She suffers from pain in her shoulder and regular migraines. Tr. 133-14. And if she climbs stairs or walk up a hill, she becomes faint, and if she does not "stop in time to rest," she faints and falls. Tr. 377.

The ALJ discounted Plaintiff's testimony because she improved with treatment and the ALJ found Plaintiff's testimony was inconsistent with her daily living activities. Neither reason is supported by substantial evidence in the record.

### 1.    Improvement with Treatment

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. § 404.1529(c)(3). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995), *as amended* (Apr. 9, 1996) ("Occasional symptom-free periods . . . are not inconsistent with disability.").

The ALJ concluded that Plaintiff's shoulder and arm improved with treatment. Tr. 75. Although Plaintiff saw improvement over her two years of physical therapy, she still consistently complained of shoulder pain and limited mobility in her right arm. *See, e.g.*, Tr. 1648 (May 30, 2018 – "Arm feeling substantially better. It still hurts with most activities, but much less now."); Tr. 1368 (Sept. 4, 2018 – "'My shoulder's been getting better and better' with OMT . . . Still 'hurts really badly' with certain motions (reaching into back seat of car, reaching up at odd

angle) but pain is only brief."); Tr. 1643 (Dec. 17, 2018 – "has notice[d] an increase in pain of

the last 1-2 months, up to 7/10 pain"); Tr. 1964 (Aug. 6, 2020 – "Reaching for objects above her

head – this seems to be getting overall better although still somewhat difficult."). Although her

pain lessened, she still experienced pain with the use of her arm even after years of physical

therapy. Although Plaintiff's shoulder did improve, the ALJ did not explain how such

improvement was inconsistent with Plaintiff's testimony that she still experiences pain in her

shoulder and has mobility issues. This rationale is not supported by substantial evidence and

constitutes harmful error.

### 2. Daily Living Activities

An ALJ may rely on daily living activities as a basis for discounting subjective symptoms

if the claimant's activities contradict her testimony or meet the threshold for transferable skills.

*Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th

Cir. 2007). For daily activities to discount subjective symptom testimony, the activities need not

be equivalent to full-time work; it is enough that the claimant's activities "contradict claims of a

totally debilitating impairment." *Molina*, 674 F.3d at 1113. Claimants do not, however, need to

be utterly incapacitated to receive disability benefits, and an ability to complete certain routine

activities is insufficient to discount subjective symptom testimony. *See id.* at 1112-13 (noting

that "a claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation

marks omitted)).

The ALJ discounted Plaintiff's subjective testimony because she attends a weekly yoga

class for cancer patients and goes on walks on the weekend. Such activities were encouraged and

recommended by Plaintiff's medical providers and do not contradict her testimony regarding her

fatigue or need to rest every 15 minutes on her walk. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (certain activities such as limited walking for exercise do not detract from a claimant's credibility); *Jordan v. Astrue*, 262 F. App'x 843, 845 (9th Cir. 2008) (claimant's ability to do some therapeutic exercises was not inconsistent with allegation that he needed to lie down regularly to alleviate pain). The ALJ also referenced Plaintiff's trip to London three different times as evidence that she was capable of more than she claimed. Tr. 69, 75. A careful review of the record makes clear that Plaintiff made that trip for her mother's funeral and the trip set her back in her recovery from her breast cancer surgery. Tr. 645, 814, 976. Sometimes we sacrifice our own health for those we love, and such a sacrifice should not be used against Plaintiff.

Finally, the ALJ did not explain how Plaintiff's walking, yoga, and ability to do basic household chores undermined Plaintiff's testimony that she only has "1-3 functional hours" per day, nor did the ALJ expand on any other activities of daily living that would support this conclusion. Accordingly, Plaintiff's activities are not a specific, clear, and convincing reason supported by substantial evidence upon which to discount Plaintiff's subjective symptom testimony.

## III.    MEDICAL OPINION EVIDENCE

Finally, Plaintiff argues the ALJ improperly rejected Dr. Sosa's medical opinion. Under the new regulations for evaluating medical opinions, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). Instead, the ALJ must evaluate all medical opinions and prior

administrative medical findings for persuasiveness. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). In doing so, an ALJ considers the following factors: (1) supportability, as shown by relevant evidence and explanation; (2) consistency with the record as a whole; (3) the relationship between the source and the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other information in the record. 20 C.F.R. § 416.920c(c). Of these, supportability and consistency are the most important and must be articulated in the ALJ's decision. 20 C.F.R. § 416.920c(b)(2). These regulations displace the Ninth Circuit's standard requiring an ALJ to provide "specific and legitimate" reasons for rejecting a treating or examining doctor's opinions. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Now, an ALJ's decision for discrediting any medical opinion "must simply be supported by substantial evidence." *Id.*

Dr. Sosa began seeing Plaintiff in December 2018. Tr. 1891. As explained above, Dr. Sosa wrote a letter on Plaintiff's behalf on January 8, 2021. Tr. 2116. In his letter, Dr. Sosa opined that Plaintiff would not "be able to work even 20 hours of work per week" because Plaintiff would not be able to "get through even her first day at a job without worsening symptoms to the extent that she would be required to rest for several days." *Id.* Dr. Sosa then described Plaintiff's numerous diagnoses and explained that Plaintiff's limitations do "not stem from a single diagnosis but the sum of the parts." Tr. 2117.

Dr. Sosa explained that Plaintiff is "unable to wait in our waiting room without experiencing a panic attack" and that her staff now recognizes Plaintiff and "brings her into an exam room early in order to avoid this situation." *Id.* Dr. Sosa also opined that Plaintiff cannot spend more than 15 minutes outside on days that are warmer than 80 degrees without

"developing pre-syncopal or dizzy reactions." *Id.* And she experiences these same symptoms if she stands in one position for more than 5-10 minutes. *Id.* Dr. Sosa opined that Plaintiff is "unable to perform any repetitive overhead reaching or lifting" due to her lymphedema in her right shoulder. *Id.*

The ALJ found Dr. Sosa's opinion unpersuasive, concluding (1) it was not supported by her treatment notes; (2) there was no evidence of any recurrence of cancer; (3) it was inconsistent with Plaintiff showing improvement with treatment; and (4) it was inconsistent with Plaintiff's daily living activities. Tr. 72.

The ALJ offered no specifics as to how Dr. Sosa's opinion was inconsistent with her own treatment notes. This Court's careful review of the record was unable to find inconsistencies between Dr. Sosa's opinion and her notes. *See, e.g.,* Tr. 791 (discussing dizzy spells with flashing lights and walking up hill); 800 (reported feeling "faint and lightheaded and nearly passing out" after one flight of stairs); 1831 (discussing Plaintiff's fatigue); 1964 (Plaintiff "can walk for an hour if she rests every 15 min or so"). Plaintiff met with Dr. Sosa regularly to discuss her condition and issues and try new treatments, whether it was adjustment in medications or referrals to specialists. *See, e.g.*, Tr. 1309 (referred to ophthalmologist); 1312 (referred to cardiologist); 1355 (lab work to test allergies); 1365 (testing Plaintiff's tryptase levels); 1373 (ordered 48-hour Holter Monitor). Because Dr. Sosa's treatment notes are consistent with her opinion, the ALJ's rationale was not supported by substantial evidence.

The Court is troubled by the ALJ's comment that "there was no evidence of any cancer recurrence," as a reason for finding Dr. Sosa's opinion not persuasive. Tr. 72. Neither Plaintiff nor Dr. Sosa claimed she was disabled because of her breast cancer diagnosis, but because, in

part, of the lymphedema that developed after her lumpectomy. When listing Plaintiff's

diagnoses, Dr. Sosa did not list breast cancer. Tr. 2116 ("dysautonomia . . . anxiety, depression,

poor concentration, hyperarousal/Post Traumatic Stress Disorder, chronic migraines,

fibromyalgia"). The fact that Plaintiff's cancer has not returned has no bearing on whether Dr.

Sosa's medical opinion is persuasive, and it was harmful error for the ALJ to find otherwise.

The ALJ's remaining rationales—that Plaintiff showed improvement with treatment and

her daily living activities—are not supported by substantial evidence for the reasons explained

above. The ALJ erred by rejecting Dr. Sosa's medical opinion for reasons that are not supported

by substantial evidence.

## IV.     REMAND

In this case, the Court has determined that the ALJ's opinion contains non-harmless

errors and so must determine whether remand should be for further proceedings or for an award

of benefits. The decision whether to remand for further proceedings or for the immediate

payments of benefits lies within the discretion of the court. *Treichler*, 775 F.3d at 1101-02. A

remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally

sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no

outstanding issues that must be resolved, and further administrative proceedings would not be

useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the

slightest uncertainty" concerning disability. *Id.* at 1100-01 (quotation marks and citations

omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407–08 (9th Cir. 2015), *as amended* (Feb.

5, 2016) (summarizing the standard for determining the proper remedy). The second and third

prongs of the test often merge into a single question: Whether the ALJ would have to award

16 – OPINION AND ORDER

benefits if the case were remanded for further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1178 n.7 (9th Cir. 2000).

In this case, the ALJ erred by (1) failing to either credit Plaintiff's symptom testimony or give legally sufficient reasons for rejecting it, and (2) failing to either credit the limitations as assessed by Dr. Sosa in her January 8, 2021, letter or give legally sufficient reasons for rejecting them. Given the record, and the complicated nature of Plaintiff's diagnoses and treatment, the Court concludes that the appropriate remedy is a remand for further proceedings. On remand, the ALJ should:

(1) Credit Plaintiff's testimony or give specific, clear, and convincing reasons supported by substantial evidence; and

(2) Credit Dr. Sosa's opinion in her January 8, 2021, letter or give legally sufficient reasons for assigning limited weight to that opinion.

## **CONCLUSION**

For these reasons, the Commissioner's final decision is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 30th day of October, 2023.

/s/  Michael McShane
Michael J. McShane
United States District Judge

17 – OPINION AND ORDER